L.P. v. Thomas Perez Next case of the afternoon is No. 14-405A5, Gate Guard Services v. Perez, Department of Labor. Mr. Romhelf. Good afternoon. My name is Dean Romhelf, here on behalf of the Secretary of Labor. In this case, Secretary of Labor is both the appellant and the cross-appellee in this case. The Secretary is arguing that the District Court's award of attorney's fees pursuant to EJA's substantially justified provision should be reversed for two reasons. The first reason is that Gate Guard's application for fees pursuant to that provision was untimely, and on that basis alone, the application should have been dismissed. The second argument is that the District Court abuses discretion by finding that the Secretary's position in the matter was not substantially justified. Regarding the timeliness argument, EJA sets forth two distinct statutory provisions to recover fees. One of those is what's known as the bad faith provision, that's 28 U.S.C. 2412B, and it also has a provision that's a fairly unique provision that allows for recovery when the government's position is not substantially justified. That's 28 U.S.C. 2412D. After prevailing on the merits of this matter, Gate Guard filed a motion for attorney's fees pursuant to the bad faith provision. In its motion, it identified these two distinct statutory provisions. It chose, it described the bad faith provision as the method applicable to this case, and it made arguments pursuant to that provision. The substantially justified provision has a time limit. It's a statutory time limit that the application must be filed within 30 days of final judgment. It also requires that certain showings be made in that application, including that the party is the prevailing party, that it meets certain net worth requirements, and also that the government's position is not substantially justified, and also must include an itemized fee, itemized description of the fees available. So the first motion that Gate Guard filed, the only timely motion that Gate Guard filed, contained none of those requirements. But they had been arguing for fees from day one, had they not? Well, it's true that in the complaint, in the amended complaint, there were reference made to the fact that Gate Guard would recover fees. And there's really nothing in the, the DOL doesn't assert anything amounting to prejudice from this change, other than the statutory argument, right? Well, let me answer that in two ways. First of all, the Department is asserting that prejudice. When the first motion was filed, Gate Guard indicated a desire to pursue fees under one provision. The time, the deadline for filing under the other provision passed. At that point, the Secretary should have been able to assume that— All the Secretary was able to assume was that he could be liable for bad faith, which, in my humble view, is still on the table. So the, the fact that the Secretary had to defend against the greater claim surely would mean that that would be a defense against the lesser claim at some, at some level, as to quantum or something like that. Well, again— Classification. Excuse me. The, the statutory provision requires that it be filed within the 30-day deadline. Okay, but typically prejudice is not based on, boy, I thought I got away with it. It's based on witnesses get, you know, die and leave, documents are destroyed, this kind of thing. Something is done in reliance on not being liable. You haven't identified anything other than you thought the coast was clear and it wasn't. We don't have to show prejudice. Relation back, the relation back doctrine shouldn't apply here to begin with. As the Supreme Court said in Scarborough, relation back or prejudice is a fallback argument that may be available to a party when relation back is otherwise available. Okay, so you will concede that you were not prejudiced, so the question is just, is there a possibility of relation back or not? I, I don't concede that, but I want to make— What was the prejudice? Because that's what, that was the original question by Judge Jones and all you said was we thought the coast was clear. So then that led to my question. Then you said, well, we don't need prejudice. So which one is it? It's both. Okay, so what was the prejudice? The prejudice is the concern, as I mentioned, it was the, it was the reliance on the fact that nothing had been filed within the, within the 30-day deadline. Okay, but what did you do in reliance? I mean, what happened differently other than just that feeling of relief that was taken away? What happened that was different? What would change? The concern here is that to the extent that a attorney's fees application can be argued, and I don't think this was the intention at all of GateGuard. I don't ascribe to them any sort of bad intentions. Well, that's good because your supervisor sure didn't, Mr. Rapsine sure didn't look at it that way and nor did your trial counsel. Well, is the prejudice like writing another brief? Is that what you're trying to say? Again, let me, let me make clear. Prejudice does not, is not something that we need to show. The relation back doctrine does not— What does it do? What is it? I think I've already articulated to the best that I can. I'm sorry. What's your best circuit authority to support the argument that there should be no relation back here? Circuit court. Because Scarborough is, you know, not directly on point. I think every case in which relation back has been allowed, there was a situation where there was a timely application for fees pursuant to the substantially justified provision, but that application contained some sort of defect. For example, maybe the net worth allegations weren't, weren't proven or substantiated to the extent required. But in each of those cases, there was a timely application of fees. And that's what's required for relation back doctrine to apply. I mean, as Scarborough makes clear— All the tests are even more stringent for the bad faith fees, right? There certainly is a high, a party seeking fees under the bad faith provision certainly has a, it's a higher showing. It's not, it's not, they're not the same sort of criteria that are necessary. I mean, the substantially justified provision has a number of initial criteria that a party may meet before the government. Well, let's, let's, you know, you can move on to that part of your argument, but at some point, I need you to defend why this is not bad faith conduct of this litigation from the get-go. Okay. I will get to that. But on the, on one, just again on the timeliness, each case, the relation back is meant to apply when the government is on or a party is on notice of certain things. And in the, in the EJ context and Scarborough and the cases that have followed Scarborough allow, in each case, there was a timely application that put the government on notice that fees were being pursued. But here there's a timely application that puts you on notice that fees are being pursued. It's just a different theory. It's more than that. That's why the argument is a different theory. And relation back usually is because it's a different theory. I mean, when you have relation back of complaints and amended complaints and so forth, if you'd stated the theory on the first day, you wouldn't need relation back. So relation back by its nature means that you didn't say everything you should have said the first time. But here you have an application that was filed within the 30 days that put you on notice they're seeking fees. What changed was the theory. Well, not only did the theory change. But it's the same operative facts. But it's a different, it's a distinct analysis. I mean, analysis under substantially justified focuses on the position of the United States and the agency that was at dispute in the litigation. It's a determination of whether that position was reasonable or not. Under bad faith, it's a different analysis as we've set forth in a brief. It's a, it's a, it's a determination. But it's the same operative facts, right? There are, obviously there are some facts that overlap. But again, the point of the relation back doctrine is to cure deficiencies, not to allow an entirely new theory after the statutory deadline. Again, here, this is not some sort of rule of, a federal rule of civil procedure or something like that. This is a statutory command that certain things must be showed, shown within 30 days of final judgment. I mean, it's in the statute and that wasn't satisfied here. Why do you claim that the position of the Department of Labor was substantially justified? Well, first of all, the district court determination, basically the district court identified ten particular facts that it found that if those facts were present, then it's not possible for the district court's decision, sorry, it's not possible for the government's position to be substantially justified. It's not possible for the judge, the government's position to be reasonable. And it's our concern, first of all, that any sort of analysis of whether a worker is an employee or independent contractor is highly dependent on the particular facts presented, as this court said, in Thiebaud v. Bell South and other cases. And as this court has said in other cases, including Brock v. Mr. W. Fireworks, it depends on a balance of all those facts. And the district court picked out ten facts. And we have, we believe, and as we've argued in our brief, that a number of those facts, it's problematic that the government's position was not reasonable. I mean, specifically, it relied on the fact that the particular workers here had no training. And in its decision on the merits, it identified that fact that the workers here had no training as evidence that they were employees. This was the type of work that required little training. It was done remotely. And what used to be a fact in support of determination that the workers were employees became a fact in support of determination of independent contractors. Well, on the other hand, I mean, he balanced quite favorably to you, given all the, your party, given all the circumstances. The gate attendants are free to reject assignments without penalty. They work with no day-to-day supervision. They're authorized to hire relief workers. They have the ability to increase their profits or suffer a loss. They work on a temporary project-by-project basis. They are not precluded from other work. They enter into independent contractor agreements with GGS and industry custom for gate attendants to work as independent contractors, and the federal government itself hires gatekeepers under precisely the same circumstances. Now, that's nine out of ten, and even if you were to go down to six out of ten, the district court was certainly able to make these determinations, particularly based on the fact that your side had interviewed at most 17 workers and their side put in 94 affidavits. Well, I would reject the contention that the number of affidavits is controlling. I mean, more interviews were done than 17 and more. I think approximately 30 affidavits were submitted with the . . . And there are 400 employees, so you're dealing with a very small number. The department always takes an approach when there are numbers of employees that are this large with taking a representative sample, and that certainly approach has been adopted and . . . But that's when you can attribute, you don't have at least nine, I'm giving you credit for the one that you mentioned, facts that are so obvious to the casual observer that even another district court . . . These cases are going on summary judgment. There are no trials in these cases. Well, let me address some of the other facts that you mentioned. Certainly, the fact that they signed independent contractor agreements, it's the secretary's position that it's not relevant to the inquiry. That fact has been rejected by this court. And then a lot of them are taking all sorts of business tax deductions as if they were independent contractors, in which case, if you win, you're getting them all in trouble with the IRS, which seems rather self-defeating. Well, that's . . . Those business deductions were a reflection of their characterization as independent contractors, not necessarily evidence of their characterization. So they're lying, too, but you're . . . So you're representing them, but they're lying to the government, too, so you can go after them after you go after Whitgar. We are enforcing the statute and not necessarily representing them or not representing them or not trying to get anybody in trouble with the tax stories. Our point is to enforce the underlying obligations, then we seek to recover back wages on their behalf. Well, since you're down to less than two and a half minutes, let's go to what the district court said about Mr. Rapstein, and this is where I think he was way too generous. Mr. Rapstein meets these former employees in a bar. There is good reason to believe that these people are less than upstanding citizens in various ways and that they might have something against this company. He begins an investigation. He then shows up at the plant two weeks or the office two weeks before he said he was going to formally interview them. Right after the . . . hours after the opening conference, he sends an email saying the company is digging their own grave. He seemed to have made up his mind. His supervisor said before calculating back wages, it would be wise to first establish that the employer is covered under the FLSA, but Rapstein did not do this. He began calculating back wages immediately. I need hardly add that he estimated $6 million in back wages at that point in time, which was almost the net worth of the company and which is three times what the company conceded. He destroyed all of his handwritten notes, shredded and burned them. Again, the supervisor said this was not a standard procedure. This is all. Then you get into litigation and you make them pay money to their lawyers to argue over what should be an ordinary transfer of a case to a different division a hundred miles away from Corpus Christi. Then you argue over whether their declaratory judgment should be dismissed. Then your lawyer conducts the deposition in such a way that they have to go to the judge because she is obstructing every single question that's asked. What is good faith about that? You're the government. They are hardworking taxpayers. What can possibly be said in favor of that type of conduct by the American government? If I may respond, even though my time is running out. I'll give you a minute extra. I appreciate that. I think we've addressed each one, but with respect to the last several, the filing, it's not bad faith because in situations in, for example, the deposition conduct, mistakes were made. Bad faith is sort of obstinance or continued refusal to comply with a court or statutory order. In most of the cases that the district court has decided, that's what happened in those cases. In the case of the depositions, for example, the secretary's counsel came to this table, voluntarily worked out an agreement with Gate Guard's attorneys to conduct further depositions in a proper manner going forward. That situation didn't happen again. It was corrected. It's certainly not bad faith when a party makes mistakes during the course of litigation or during the course of an investigation. Does Mr. Rapstein still work for the Department of Labor? He does not, Your Honor. At least that's a relief. May save you some attorney's fees in the future. Again, the mistakes that he made, while were violations of policy, they were recognized that, but efforts were taken when it was possible to correct the mistakes, to come to the table to work to resolve the mistakes. That's the difference between the conduct here and the conduct in the cases decided by the district court. And I just said, suppose you were the business person and the government came to you and said, you owe us back wages of $6 million. Now, I don't know whether that included taxes or not, I mean, interest or not. You owe us $6 million. Your company's net worth is less than $7 million. Your entire life is passing before your eyes. When that threat proves to be so hollow that you lose on a summary judgment motion, that you win on a summary judgment motion, what do you think about the people who brought those charges? May I respond? Certainly. I certainly agree that that was a very high amount of money, a very substantial amount of money, but the underlying position that these particular workers were employees opposed to independent contractors was not hollow. It was reasonable. It was supported by the arguments and the evidence. All right, sir. Thank you. Mr. Knight. Nolan Knight here on behalf of Gate Guard Services and Bert Steindorf, who I will refer to as Gate Guard. My inclination, members of the court, was to start with the substantially justified issue and why that issue should not be reversed. But candidly, I would like to take up Judge Jones's concern that the bad faith issue is very much still on the table. And I'll say, I'm speaking for myself. I don't have any idea what other members of the panel may think. Absolutely, Your Honor. But the government's conduct does constitute bad faith. As a matter of clarification, I think that one of the initial things that we need to do, because the government did not, is acknowledge this circuit's standard for determining bad faith. Whereas the Department of Labor has chosen to cite authority from, I believe, the Second Circuit, the Sixth Circuit, and the Tenth Circuit, which, in my mind, quite clearly departs from the standard that this court long has recognized for determining bad faith, which is an extension of the American rule that looks at whether or not the conduct is vexatiously, vexatious, wanton, or engaged in for improper purpose, making fairly clear in my mind that improper purpose cannot be an essential prerequisite to a finding of bad faith. Bad faith, instead, has been found when the government's position is frivolous, is frivolous, it will be clear that they do not have a legitimate position. Judge Jones, when you articulate the ten factors that Judge Rainey in the lower court considered in making his Federal Labor Standards Act determination, and you see that quite clearly nine of those ten factors unequivocally cut in favor of Gateguard, but because of the manner in which Mr. Rapstein, the Department of Labor's investigator, pursued the matter, the uncomfortable personal relationships that he had with a number of individuals of highly questionable character, and the fact that at no point in time in this process, during the levels of administrative review before the Department of Labor decided to litigate this matter, no one exercised what I think would have been common sense to say, I'm sorry, guys, this is not in appropriate circumstances, when the government should be bringing this level of force to bear on a private individual who . . . What were the actual fees that Gateguard has incurred? In the context of litigation fees, Your Honor? Yes. The award that Judge Rainey made was 535 . . . I understand that, but that's at CJA rates, so I'm just . . . if bad faith entitles, would entitle Gateguard its total fees, right? That is correct, Your Honor. What was your bill to your client, the attorney's fee bill to the client? I don't have the specific number, Your Honor, but it was certainly in excess of the 535,000 that was rewarded because Judge Rainey did, in fact, discount the fees based upon the substantial justification criteria, and if the court either . . . Give him a note. The co-counsel wants to provide a note. Typically lawyers know what their fees are. My apologies, Your Honor. But you just work for the sheer love of it. One of the complicating factors is that under this court's authority, a party is also entitled to recover the fees incurred in appeal, so the number as it existed at the district court level, that's exactly right. Is that true for the substantial justification or only for the bad faith?  We would have to remand on that, or you would ask us to assess that? That's correct, Your Honor. You'd ask us to assess your appellate fees or remand for that? It would be up to us. Depending upon how the court resolves the bad faith issue, because if the court remands for a calculation of fees on bad faith, then we're going to request the non-capped rate,  But if they lose on the substantially justified point, in other words, if you win, if the district court's affirmed, then do you get appellate attorney's fees? We do, Your Honor. And do we decide those or does the district court, the amount? This court can decide it. If it does not, and I can cite for you the case because I made a note of it. Well, I think the answer is sometimes we do it and sometimes we remand. I think we have the power, but not the requirement. I agree. Your Honor, let me backtrack a little bit. I'm a little curious. Why didn't you assert these theories in the alternative? I mean, why were you just so sure it's going to be bad faith? Wouldn't it be prudent to have a fallback position that would say, well, if it's not that, at least it's not substantially justified? Well, certainly, Your Honor, we pleaded in both the original complaint and in the amended complaint, and I believe that's page 41 and 238 of the record, respectively, to put the government on notice essentially from day one. Well, what you're doing is not substantially justified. If you proceed, we are going to recover our attorneys' fees. And what is the number now that you have it? The number is approximately $900,000. So then why didn't you put it in your motion in the alternative? You put in your complaint in the alternative, so why not in your motion in the alternative? Because their behavior was just that bad, quite candidly. If you're so all in, then aren't you all in? We certainly – that's one respect, but, Your Honor, if the difference between what we did and what you're contemplating simply comes down to a matter of a footnote that says, any alternative to the court doesn't find bad faith, then certainly we've established not substantially justified. I would suggest that's a commentary on why the matter was not essential. By asserting bad faith, and I gather that the panel may have an appreciation for this, we were asserting a more demanding standard. This is a lesser-included offense? That is precisely the phrase that I was contemplating as I was working up my argument. We were not waiving or forfeiting anything, as the Department of Labor suggested. We were undertaking, because the circumstances warranted it, a more ambitious undertaking because the Equal Access to Justice Act contemplates that when the government's behavior is this bad, a party is entitled to an enhanced recovery of attorneys' fees. Well, I know that, but lawyers are cautious people, usually. You would plead things in the alternative. I mean, it's just you wouldn't get as much money in that other theory. Did you just not want to undercut your other theory? I just don't understand why you wouldn't put both out there. Getting something is better than getting nothing. Well, it was not to forfeit it, Your Honor, because if you look in our briefing, we actually cite the not substantially justified provision, we cite the bad faith provision, and then we take the position that bad faith is actually applicable here. So I agree the language could have been included, but it was not. By not including it, it did not operate as a waiver. It was not a forfeiture. The issue quite clearly had been preserved. And in that regard, I note that the government, quite frankly, has moved the goalposts on that issue a couple of times over the course of its briefing and argument. Initially its objection was that they were not aware that GateGuard had any desire or intent to pursue fees under the not substantially justified provision, so relation back principles by way of analogy to the extent that they apply would not allow them to submit their supplemental requests here. But when we pointed out in our opening brief response to their brief that, no, you're mistaken. As I made reference to the original complaint and the amended complaint, then the government abandoned this notion that we never had any clue that this was coming. That's clearly not sustainable. And for that reason, Your Honor, it was not an issue that was waived. It was always articulated, but it was the magnitude of the misconduct that warranted the approach that we ultimately took. Backing up a moment to deal with the not substantially justified issue, the government takes the position that prejudice is not a requirement for them to make a showing with respect to the timing issue. Well, if that's not the case, then what is the metric by which a district court and in turn this court would ever be able to assess whether or not the district court exercised its discretion in a sound fashion? Well, he's basically making a legal argument that if you don't say the magic words, you can never have relation back. Because if you can have relation back, I think he basically conceded he has to have prejudice and he really doesn't have it. I mean, he didn't want to say that in so many words. But after we thrashed about for five minutes, he never said anything that was prejudicial, so that struck me that way. I agree that that is what he's saying. But the problem with that is in essence it would re-attribute to the deadline in the Equal Access to Justice Act jurisdictional significance. It would become a hard and fast, rigid preclusion on a person engaging in an EHA activity contrary to the most strict fashion. And we know that that no longer can be the case because the Supreme Court in Scarborough v. Principe made clear, notwithstanding several circuits, including this circuit at one point in time, had treated that EHA deadline as a jurisdictional, absolute, unyielding timeline, that that's no longer the case. So for the government to now essentially say unless certain magic words are used at certain points in time, then the EHA deadline acts as a, I think, quote, unquote, trap for the unwary is the way that the Scarborough court phrased it. Then notwithstanding that on the merits it's clear that they have been victimized, because I do believe that that was the case here, we're going to allow the government to escape the reaches of the policy purposes of the EHA to hold them accountable under precisely these type of circumstances simply because, again, a person did not comply with those technicalities. One last observation that I will make with respect to the EHA issue and the sequencing here. Under the prior paradigm, even when the deadline in the Equal Access Justice Act was treated as a rigid jurisdictional restriction, there were several courts who looked at roughly analogous circumstances that we have here. A party, for instance, submits information regarding their network after an initial EJA submission. And even when it was treated as a jurisdictional deadline, courts held that they would allow that supplementation. Now that the deadline has been relaxed, certainly under these circumstances, the government cannot claim prejudice. It has not, as the panel pointed out, claimed that some witness passed away, that evidence was destroyed, or even that it was not allowed to argue precisely the issues that it intended to argue in the way that it intended to argue. The irony, in fact, of the government in some of its briefing referring to someone getting two bites at the apple, is that it was here, the government, had two opportunities based upon the same evidentiary record regarding its misconduct to try to demonstrate some compelling reasons as to why that conduct did not warrant a fee award. And notwithstanding those two bites at the apple, it could not do so. Clearly, it was not prejudice. Barring any further questions from the panel, Your Honor, we respectfully request that the court affirm on the not substantially justified basis either render on the issue of bad faith and remain for a recalculation of fees or remain entirely on the issue of bad faith. So to the extent that there are any outstanding questions on the issue, that can be taken up before the district court while the court simultaneously addresses the fee issue. All right. Mr. Brown. Thank you. If I may address some of the points that counsel raised. Certainly the 30-day deadline is not jurisdictional following Scarborough, but it's still a hard statutory deadline. One day or a motion that was mailed but not filed within the 30-day time limit. Federal Circuit and the Ninth Circuit decisions have found that to be insufficient to satisfy the obligation. Well, I mean, all kinds of things are hard deadlines. Statutes of limitations and a long list of things, and yet we allow relation back. You know, if you walked in and said negligent misrepresentation, later you want to amend to say fraud. I mean, it's a totally different theory, blah, blah, blah, but it's the same operative facts. We let you relate back. I mean, there's a million trillion things we could articulate where there are hard and fast dates that you missed, but because you filed something within that date, we let you relate back, and here it's the same operative facts. It's not some brand-new thing with some different set of facts. There's no case that either party has cited where under these facts a court has allowed relation back. Have they denied it? For example, a bill of costs was filed. In one case there was a bill of costs that was filed in a timely fashion pursuant to 2412A, and the court said no, that didn't put the government on notice even if it's in the same statute. Now, that's costs as opposed to fees, but it's a separate statutory provision within EJIA. What we're asking for and what we are arguing is that there must be some filing that meets the statutory criteria set out in 2412D1B that makes some effort to meet those criteria and put the government on notice if substantial justification is being pursued. They were well aware of the two methods, as I think you mentioned. They decided to go all in, which is certainly their right to choose it. They identified the bad faith application, the bad faith provision as the method applicable to the case, and that was a decision that was made. Regarding the two standards, substantial justification is not a lesser included offense within bad faith. The standards, as we've articulated in our brief, are different. And in this court, in Perales v. Casillas, for example, has determined that— You're saying substantial justification is irrelevant to bad faith? No, there is an analysis of whether the government's position was frivolous or not. And he is—I think he is right about the standard. It's not just bad faith. In the Fifth Circuit, it's vexatious wanton or for an improper purpose. Well, those are all synonyms of each other. There's not a court that's walked through and said, is this particular conduct bad faith? Is this particular conduct vexatious? Is this particular conduct wanton? But the point of the statute is that it talks about the conduct of the government vis-a-vis the private person. And what you seem to be wanting to do is to pigeonhole these awards for bad faith solely in regard to the conduct of the government vis-a-vis the court because you're putting them all—all the cases you cite are in terms of orders, you know, violated this order, violated that order, and so on. But the real victim in this is not—it is the courts, but it's also the private person. I agree that the conduct not only towards the court, but the conduct towards the party is relevant in the bad faith analysis. I'm not trying to make that distinction. The district court relied on a number of cases. And in its termination, it looked at all of the entire scope of the conduct by the government, and it applied a test, and it decided not only did the conduct not rise to that particular level, but it also determined that the government's position was more than frivolous or more than not frivolous. So there's a sort of two-part test that a number of circuit courts apply and which is consistent with this court's decisions on the bad faith analysis. The district court was correct to apply that. It looked at all the conduct. It balanced that conduct against other cases where bad faith had been found to exist, and it made a determination as discretion that that high, that very stringent standard was not met. Is there any manual of conduct or ethics that is outstanding in the Labor Department, either for the investigators or for the litigators? Well, certainly with respect to the investigators, there is a field operations handbook which describes how an investigation should be undertaken. To the extent that it's relevant and to the extent that it provides you with some reassurance, training was conducted following this case in that particular region to emphasize a couple of things, a couple of mistakes that were made. Again, we don't dispute that the investigator made mistakes and took actions that were in violation of the applicable policies. Again, we made all of our efforts to correct any mistakes, and those efforts and that intent is not the type of bad faith intent that had been found in other courts. Thank you. Thank you.